(25 Misc. Rep. 6.)

### KELLY v. SAMMIS.

(Supreme Court, Special Term, Kings County.   October, 1898.)

1. PLEADING—ANSWER—GENERAL DENIAL—NEGATIVE PREGNANT.
   A complaint set forth in detail an oral contract alleged to have been entered into between plaintiff and defendant, the acts of plaintiff thereunder, and the manner in which it had been violated by defendant. The answer denied the allegations in hæc verba, but was pregnant with the substantial truth of the allegations professedly denied. *Held*, that the answer was bad, as a negative pregnant.

2. SAME—MOTION TO MAKE DEFINITE.
   Where an answer is bad, as a negative pregnant, the motion should be for judgment on the answer as frivolous, instead of a motion to make it more certain.

3. SAME—NEW MATTER CONSTITUTING A DEFENSE.
   A general denial of the contract sued on raises the entire issue of whether such a contract was made, and hence the answer should not

include more, unless there is new matter constituting a defense. Code Civ. Proc. § 500.

**4. SAME.**

New matter constituting a defense must be expressly pleaded "as a defense," under Code Civ. Proc. § 507.

Action by James E. Kelly against Adelbert H. Sammis to recover damages for the breach of a contract. Motion to make a part of the complaint more definite and certain, and to strike out the remainder as irrelevant and redundant. Motion to strike granted.

Motion to make the first five subdivisions of the complaint more definite and certain, and to strike out all of the complaint after that as irrelevant and redundant. The complaint is as follows:

"I. That on or about the 30th day of March, 1898, the plaintiff and defendant herein made and entered into a certain parol agreement, wherein the plaintiff promised and agreed to and with the said defendant to superintend and direct the making of certain repairs to a hotel at Baldwins, Long Island, known as the America House, to prepare such hotel for the accommodation of the public, and to act as manager of the same from such date as it should be opened for business throughout the season of 1898; and wherein the defendant for and in consideration of the plaintiff's promise as aforesaid agreed to and with the said plaintiff that he would personally bear all the expenses incident to the making of such repairs and to the preparation of said hotel for the accommodation of the public, and that he would thoroughly stock, equip and furnish such hotel with all the articles and supplies necessary to the conduct of a general hotel business, and would remunerate the plaintiff for acting as manager of the same throughout the season of 1898, as aforesaid, by paying him one-half the profits derived from said hotel for said season of 1898.

"II. That beginning on or about the 1st day of April, and continuing until the 1st day of June, 1898, the plaintiff herein, in compliance with his promise as aforesaid, superintended the making of repairs to said America House and prepared it for the accommodation of the public; that on said 1st day of June, 1898, said America House was opened for the carrying on of a general hotel business, and that the plaintiff herein acted as manager of said hotel from said 1st day of June up to and until the 30th day of July, 1898, but that on said 30th day of July, 1898, although the plaintiff was ready and willing to continue as manager of said hotel throughout the remainder of the season, as agreed by the parties herein, the said defendant refused to permit him to do so and by exercise of force and intimidation drove and ejected him from said premises.

"III. That the said defendant failed to personally bear the expenses incident to the making of the repairs to said America House, and to furnish the necessary articles and supplies for the conduct of said hotel and to prepare it for the accommodation of the public, but that such expenses were paid out of the receipts of said hotel, and that the defendant has refused to reimburse the plaintiff herein to the extent of one-half the amount of such payments from said receipts, although he has frequently been requested so to do by said plaintiff.

"IV. That it was further promised and agreed by the defendant herein, in consideration of the plaintiff's agreement to act as manager of said America House, as aforesaid, that he would purchase at his own personal expense six row boats to be let out by the plaintiff, the profits from the same to be equally divided, but that the said defendant has refused to make such purchase although the plaintiff herein has requested that such purchase be made."

The answer is as follows:

"I. He denies that on or about the 30th day of March, 1898, the plaintiff and defendant herein made and entered into a certain parol agreement, wherein the plaintiff promised and agreed to and with the said defendant to superintend and direct the making of certain repairs to a hotel at Baldwins,

Long Island, known as the America House, to prepare such hotel for the accommodation of the public, and to act as manager of the same from such date as it should be opend for business throughout the season of 1898.

"II. He denies that the defendant, for and in consideration of the plaintiff's promise as aforesaid, agreed to and with the said plaintiff that he would personally bear all the expenses incident to the making of said repairs and to the preparation of said hotel for the accommodation of the public.

"III. He denies that he agreed with the plaintiff that he would thoroughly stock, equip and furnish such hotel with all the articles and supplies necessary to the conduct of a general hotel business, and would remunerate the plaintiff for acting as manager of the same through the season of 1898, as aforesaid, by paying him one-half of the profits derived from said hotel for said season of 1898.

"IV. He denies that the plaintiff in compliance with any promise made with this defendant superintended the making of repairs to said America House or prepared it for the accommodation of the public.

"V. He denies that he ever promised and agreed in consideration that plaintiff act as manager of said America House, that he would purchase at his own personal expense six row boats to be let out by the plaintiff, the profits from the same to be equally divided.

"VI. The defendant alleges that in the spring of 1898, the defendant was about to make certain repairs on the hotel above mentioned, and plaintiff upon hearing defendant state that such was his intention, plaintiff thereupon stated to defendant that he had nothing to do and nothing with which to pay his board, asked defendant if he could go down and stay in the said hotel while said repairs were being made or until he was employed on the macadamized roads. Defendant granted plaintiff said permission, but in no way engaged said plaintiff to superintend any repairs.

"VII. That on or about the 1st day of April, 1898, plaintiff stated to defendant that he had nothing to do and that he knew how to mix drinks and to properly do the work of bartender, and agreed with defendant that he would keep an accurate account of all receipts, and after paying for all the materials, rent at the rate of $60 per month, the license, help hire, and all other charges and expenses, would take one-half of the profits for his said services, the defendant to receive the other one-half. That said arrangement or agreement was to continue only from month to month. That said plaintiff did on or about the 1st day of June, 1898, enter upon his duties as such bartender and manager. That said plaintiff continued as such up to July 30, 1898. That during the time said plaintiff so acted as bartender and manager he became intoxicated, and left said premises, and took away with him ware and materials belonging to defendant, consisting of liquors and cigars. That said plaintiff refused to account for the moneys received by him from the sale of the liquors and materials sold in said hotel, altbough requested so to do by defendant. That said rent, license fee, and other charges have not been paid.

"VIII. That on the 30th day of July, 1898, said plaintiff assaulted defendant by kicking and striking him in the face while defendant attempted to enter behind the bar of said America House. That said plaintiff on said day also assaulted this defendant with a bottle and threatened to kill defendant while defendant was in said America House.

"IX. That plaintiff took in considerable money from the sale of liquors and materials between June 1 and July 30, 1898, while he acted as bartender and manager of said America House, which he has refused to account for to defendant. That said plaintiff knew nothing about properly performing the duties of bartender, and was incompetent. That he has retained and still has in his possession all the money received from the sale of liquors from the 1st day of June to July 30, 1898.

"Wherefore defendant demands that the complaint be dismissed with costs."

George M. Curtis, Jr., for plaintiff.
John Lyon, for defendant.

GAYNOR, J. Instead of being a general denial the answer consists of five separate denials of parts of the complaint which each denial sets out and denies in hæc verba. Each of these denials is a negative pregnant. It is pregnant with the substantial truth of the allegations professedly denied. The denial in hæc verba of allegations containing dates, conjunctives and disjunctives, adjectives, and the like, must as a rule be consistent with the substantial truth of the allegations, in which case there is no denial. Flack v. O'Brien, 19 Misc. Rep. 401, 43 N. Y. Supp. 854; Stuber v. McEntee, 142 N. Y. 206, 36 N. E. 878. This form of denial, even when not a negative pregnant, is very troublesome to courts, and especially trial courts. It imposes the necessity of a careful scrutiny and comparison of the complaint and answer to ascertain what parts are denied, and whether there be any which are not denied; whereas a general denial in the prescribed and scientific form of each and every allegation of the complaint, or of each and every allegation of a stated paragraph or subdivision of the complaint, which is the form required by the Code, shows without any scrutiny what is denied; and if there be something not to be denied, it is easy to cover that by adding to the general denial an exception covering it, viz., "excepting," etc., briefly designating that which is excepted. The troublesome form of denial presented by this answer seems to have become quite general because of some remarks of the judge writing in Baylis v. Stimson, 110 N. Y. 621, 17 N. E. 144. But no such meaning was intended. The denials there were of matter beginning at such a word in such a folio and ending at such a word in another folio, and that form of denial was condemned, more especially, no doubt, for the reason that in printed appeal books such original folios are seldom preserved.

But instead of moving to make these denials more definite and certain, the motion should be for judgment on the answer as frivolous. Why should the plaintiff seek to make a bad answer a good one?

All of the answer after subdivision V. is irrelevant and redundant matter. It is not pleaded as "a defense" nor could it be, for it does not constitute a "defense." It is simply verbiage. A general denial raises the whole issue upon the complaint. The answer should stop there unless there be new matter constituting a defense, and then that must be pleaded in so many words "as a defense." Anything which may be proved under a general or a special denial is not a defense and must not be pleaded as such, nor should it be set out at all. Code Civ. Proc. §§ 500, 507; Flack v. O'Brien, 19 Misc. Rep. 399, 43 N. Y. Supp. 854; Green v. Brown, 22 Misc. Rep. 279, 49 N. Y. Supp. 163; Von Hagen v. Manufacturing Co., 22 Misc. Rep. 580, 49 N. Y. Supp. 465.

The motion to make more definite and certain is denied. The motion to strike out is granted.