OSCAR GERBIG, Appellant, *v.* MARY GERBIG, Respondent.

No. 3364

September 18, 1942.                128 P. (2d) 938.

*Martin Evansen,* of Hawthorne, and *William M. Kearney* and *Robert Taylor Adams,* both of Reno, for Appellant.

*William L. Hacker* and *M. B. Moore,* both of Reno, for Respondent.

## OPINION

By the Court, TABER, J.:

In an action for malicious prosecution the Fifth judicial district court, Mineral County, awarded respondent a judgment in the sum of $3,000 compensatory, and $6,000 exemplary and punitive damages. This appeal is from that judgment, and from an order denying appellant's motion for a new trial.

The parties were married in September 1937, and resided at Hawthorne. Appellant obtained a divorce from respondent at Carson City about June 1, 1940. The trial court gave respondent permission to occupy appellant's residence at Hawthorne until July 1, 1940, and ordered Mr. Gerbig to pay her $50 per month for four months.

Respondent failed to vacate on or before July 1, whereupon appellant came to Carson City for the purpose of having her cited for contempt. She vacated his residence on July 2, and in the evening of that day had some household goods hauled away from there to a little cabin in the rear of Mr. and Mrs. Jack Miller's residence at Hawthorne. One of the men who did the hauling testified, in behalf of appellant, that there were about three truckloads, and that respondent said she wanted to be

sure that appellant was not around when the goods were moved. Respondent denies that she did not want appellant to know that she was taking the goods. Some of the goods were the exclusive property of appellant.

Appellant paid the June $50 installment of alimony, but did not pay the July installment when it became due. His reason for not doing so was, he says, that he thought respondent might return his goods if he withheld the alimony payments. Respondent came to Carson City and had appellant cited for contempt because of his failure to pay alimony. On his way from Hawthorne to appear in the last mentioned contempt proceedings, appellant stopped at Yerington where he deposited $150, the balance of the alimony, to respondent's credit and then caused it to be attached.

After discovering that some of his property had been taken from his residence, appellant swore to a criminal complaint against respondent on or about July 9, 1940, but no warrant of arrest was issued on this complaint. However, about the same time, and at his instance, a search warrant was issued. In executing this warrant the sheriff went to the Jack Miller residence, where Mrs. Gerbig was staying. She went with him to the said cabin and indicated certain boxes, saying, "these are the boxes I have, go through them and see if you can find the things you want." The sheriff then searched the cabin, and seized: 1 rocking chair; window curtain and rod attached; several table cloths; several sheets; 2 bed spreads; 1 wool quilt; 1 wool blanket; 2 pillows and 2 pillow slips; several bath towels, face towels, dish towels; 1 ironing board; 1 pressure cooker; 1 waffle iron; bake pan and wooden chopping bowl. These goods were delivered by the sheriff to the justice of the peace who, after the preliminary hearing later referred to herein, delivered them to appellant.

Appellant, claiming that more of his goods were missing from his residence than were seized by the sheriff and being convinced, as he says, that respondent had

taken them, as she had been in exclusive possession of the residence until July 2 and had had several truckloads of goods hauled away from the residence on the evening of that day while appellant was in Carson City, swore to a criminal complaint before the justice of the peace of Hawthorne township on July 16, 1940, charging respondent with the crime of grand larcency. The reason given by him for instituting this prosecution was, "So that I could get my stuff back, belonging to me."

On July 18, 1940, respondent was arrested at Reno by the sheriff of Mineral County. She was not imprisoned, and the next day furnished bail in the sum of $500. She appeared before the magistrate at Hawthorne on July 26. The magistrate says he told the district attorney and Mr. Gerbig that the evidence did not justify pressing a charge of grand larceny, but did justify a charge of petty larceny, and that he was ready to have a trial on that charge if they wanted it. Mr. Gerbig, according to the magistrate, then spoke up and said he had been advised that the other missing goods had been stored somewhere in Reno, and requested a continuance for a few days so he could go to Reno and make a search. A continuance having been granted, appellant went to Reno and made inquiries at several warehouses, but failed to locate any of his property. The preliminary examination was held at Hawthorne on August 5, and on August 6 respondent was discharged for lack of sufficient evidence to justify binding her over to the district court.

Appellant (defendant), in his answer to the complaint, admitted that he commenced the criminal prosecution, but denied that he did so with malice or without probable cause. On the trial respondent (plaintiff) testified concerning the injurious effects upon her resulting from said prosecution.

Of the alleged errors assigned by appellant, we have found it necessary to consider but one, namely, that the

trial court wrongfully refused to allow appellant to present his defense of advice of counsel. From the direct examination of appellant, testifying at the trial in his own behalf, we quote the following:

"Q. Now Mr. Gerbig at the time you filed the complaint did you have any malice against the plaintiff in this action? A. Absolutely not.

"Q. Did you go to anyone for advice as to the issuance of the criminal complaint, Mr. Gerbig?

"Counsel for plaintiff: We object to the question, it is immaterial and not within the issues of this case.

"Counsel for defense: It goes to the issue of probable cause.

"The Court: The objection sustained.

"Counsel: Now Mr. Gerbig will you again state what all your reasons were for filing this complaint against Mrs. Gerbig? A. When we got in everything was gone, then the District Attorney—.

"Counsel for plaintiff: I move now, if the Court please, that all the testimony of the witness relating to the advice of the District Attorney and Judge Guild be stricken as not responsive to the question, also as being irrelevant and immaterial and does not go to prove any of the issues of the case.

"The Court: The motion is granted, the testimony may be stricken."

In denying appellant's motion for a new trial, the lower court, referring to this matter of advice of counsel, said: "* * * it still fairly appears from the whole of the record that the contention of error, based upon the proposition that the Court erred in sustaining the objection with reference to advice of counsel, the court determines that the issue thus presented is without merit, for the reason that advice of counsel is special defense and must be pleaded, and, therefore, this objection avails nothing."

██ In respondent's brief this action of the trial court is defended upon three grounds, the first of which

is that the question "Did you go to any one for advice as to the issuance of the criminal complaint, Mr. Gerbig?" was not a proper question "because in any jurisdiction it could only be relied upon if advice was sought from a reputable attorney and after giving a full and fair account of the facts within the knowledge of the parties seeking the advice." It is true that in order to show the existence of probable cause for initiating criminal proceedings in reliance upon the advice of counsel it must appear, among other things, that the advice was sought in good faith, and given after a full disclosure of the facts within the accuser's knowledge and information. Anderson v. Snell, 57 Nev. 78, 83, 58 P.(2d) 1041, 62 P.(2d) 703; Ricord v. Central Pac. R. R. Co., 15 Nev. 167; 34 Am. Jur. 747, n. 9; Restatement of the Law, Torts, vol. 3, sec. 666; Cooley on Torts (4th ed.), vol. 1, sec. 117; Burdick's Law of Torts, (4th ed.), sec. 268; 38 C. J., "Malicious Prosecution," secs. 75–83. But here the appellant was shut off at the outset from offering any testimony whatsoever with respect to advice of counsel. It is obvious that he could not offer testimony showing that he had acted in good faith and made a full disclosure of all the facts to counsel when he was not even permitted to testify that he had sought the advice of counsel.

■ Respondent further contends that had appellant shown that he had sought and received the advice of reputable counsel, he would not have acted upon such advice because the record, as respondent asserts, discloses that appellant was acting in his own behalf solely for the purpose of getting his goods back. Appellant did testify, as we have seen, that he swore to the grand larceny complaint so that he could get the goods that belonged to him; but it does not necessarily follow from this that he would have initiated such a prosecution if he had been advised by counsel not to do so.

■■ Finally respondent argues that advice of counsel is new matter within the meaning of subdivision 2

of sec. 8602 N. C. L. 1929, and must be pleaded as a special defense. This position is not entirely without support in the authorities. See Eihlert v. Gommoll, 23 Ohio Cir. Ct. R. 586. But the better rule, sustained by the great weight of authority, is that evidence regarding advice of counsel may be admitted under defendant's denial of plaintiff's allegation of prosecution without probable cause, that advice of counsel is not new matter, and that it need not be specially pleaded. Richter v. Neilson, 11 Cal. App. (2d) 503, 54 P. (2d) 54; Stephens v. Conley, 48 Mont. 352, 138 P. 189, Ann. Cas. 1915D, 958; Smith v. Davis, 3 Mont. 109; Sparling v. Conway, 75 Mo. 510; Levy v. Brannan, 39 Cal. 485; Folger v. Washburn, 137 Mass. 60; Emler v. Fox, 172 Ky. 290, 189 S. W. 469; Griffin v. Chubb, 7 Tex. 603, 58 Am. Dec. 85; 34 Am. Jur. 773, n. 20; 38 C. J. 472, n. 12; Bancroft's Code Pl., vol. 3, sec. 1786, n. 19; 16 Cal. Jur. 746, n. 3; Pomeroy's Code Rem. (5th ed.), p. 910, n. 59; Annotation 26 Am. St. Rep. 127, at page 153.

██ Dixon v. Pruett, 42 Nev. 345, 177 P. 11, relied on by respondent, in no way impugns the rule that advice of counsel is not new matter; on the contrary, that case recognizes, as do other decisions of this court, that new matter is matter in the nature of confession and avoidance. Parks v. Western Union Tel. Co., 45 Nev. 411, 197 P. 580, 204 P. 884; Ferguson v. Rutherford, 7 Nev. 385. An answer in confession and avoidance does not deny the allegations of the complaint, but seeks to avoid such allegations by setting up new affirmative matter. Parks v. Western Union Tel. Co., supra; Dixon v. Pruett, supra; 41 Am. Jur., "Pleading," sec. 158; 49 C. J. 290, n. 50. In the instant case appellant, as defendant in the lower court, admitted that he caused the criminal prosecution to be initiated, but denied that in so doing he acted maliciously or without probable cause. As the answer denied these material and essential allegations of the complaint, it was not a plea in confession and avoidance.

The action of the trial court in refusing to permit appellant to offer any testimony relating to advice of counsel constituted prejudicial error. The judgment and order appealed from are reversed, and the cause remanded to the lower court for a new trial.